IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

THE CLUB AT HOKULI'A, INC.,   )       CIVIL NO. 10-00241 JMS-LEK
ET AL.,                       )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
AMERICAN MOTORISTS INSURANCE  )
COMPANY, ET AL.,              )
                              )
          Defendants.         )
_____)


**FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART PLAINTIFFS' MOTION FOR REMAND AND
DEFENDANT 1250 OCEANSIDE PARTNERS' MOTION TO REMAND**

On May 26, 2010, Plaintiffs the Club at Hokuli`a, Inc.

("the Club") and the Hokuli`a Community Association, Inc. ("HCA")

(collectively "Plaintiffs") filed their Motion for Remand

("Plaintiffs' Motion"), and Defendant 1250 Oceanside Partners

("Oceanside") filed its Motion to Remand ("Oceanside's Motion").

Defendant American Motorists Insurance Company ("AMIC") filed its

memorandum in opposition to Plaintiffs' Motion and its memorandum

in opposition to Oceanside's Motion on July 9, 2010, and

Plaintiffs and Oceanside each filed a reply on July 16, 2010.

These matters came on for hearing on August 6, 2010.  Appearing

on behalf of Plaintiffs were J. Douglas Ing, Esq., Brian Kang,

Esq., and Sandra Edwards, Esq.  Appearing on behalf of Oceanside

were William Meheula, Esq., Kurt Kagawa, Esq., and, by telephone,

Mary Cannon Veed, Esq.  Appearing on behalf of AMIC were

Roy Ogawa, Esq., and Jeffrey Robbins, Esq.  At the hearing, this Court gave AMIC leave to file a supplemental memorandum addressing new matters that Plaintiffs raised at the hearing. AMIC filed its supplemental memorandum on August 13, 2010.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion and Oceanside's Motion be GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

On April 5, 2010, Plaintiffs filed the instant action against AMIC and Oceanside in state court.  The Club and HCA are non-profit corporations organized under Hawai`i law, with their principal places of business in Kailua-Kona, Hawai`i.  [Complaint at ¶¶ 1-2.]  Oceanside was the developer of project known as Hokuli`a.  AMIC was Oceanside's surety.  Oceanside intended to offer residential lots in a subdivision of Hokuli`a known as "Phase 1", as well as additional lots in a subdivision known as "Phase 2".  Hokuli`a has not been completed, and Plaintiffs allege that AMIC has failed and refused to perform its obligations as the surety.  [Id. at ¶ 7.]

According to the Complaint, on September 16, 1999, Oceanside and the Club entered into a written agreement in which Oceanside agreed to develop certain amenities for Hokuli`a,

2

including *inter alia*, a golf course, clubhouse, golf maintenance facility, beach activity center, and four tennis courts. That agreement was later amended and superceded by a June 6, 2001 agreement ("the Club Improvements Agreement") which reflected delays in the estimated completion dates and added a spa to the required beach facility. [Exh. A to Complaint.] The Club Improvements Agreement required Oceanside to obtain a surety performance bond to ensure the faithful and timely completion of the improvements. [Complaint at ¶¶ 8-9.] On September 16, 1999, Oceanside obtained a surety performance bond from AMIC in the amount of $27.8 million. On June 6, 2001, that bond was superceded by another performance bond in the amount of $28.8 million ("the Club Improvements Bond"). [Id. at ¶ 10; Exh. B to Complaint.]

Oceanside and HCA entered into a September 16, 1999 agreement regarding improvements to the Phase 1 subdivision ("Phase 1 Agreement"). [Exh. C to Complaint.] Oceanside agreed to develop certain utilities and other facilities and improvements, including, *inter alia*: completing electric lines, telephone lines, utility ductline-cable lines, and an electrical substation; revegetating residential lots; and completing a shoreline park accessible to the public. The Phase 1 Agreement required Oceanside to obtain a surety performance bond to ensure faithful and timely completion. [Complaint at ¶¶ 12-13.] On

3

September 16, 1999, Oceanside obtained a surety performance bond from AMIC in the amount of $17,400,944.00 ("the Phase 1 Bond"). [Id. at ¶ 14; Exh. D to Complaint.]

On June 13, 2001, Oceanside and HCA entered into a similar agreement regarding improvements to the Phase 2 subdivision ("Phase 2 Agreement"). [Complaint at ¶¶ 16-17; Exh. E to Complaint.] On June 13, 2001, Oceanside obtained a surety performance bond from AMIC in the amount of $4,600,750.00 ("the Phase 2 Bond"). [Complaint at ¶ 18; Exh. F to Complaint.]

In the Complaint, Plaintiffs allege that the Club Improvements Bond, the Phase 1 Bond, and the Phase 2 Bond (collectively "the Bonds") are contracts that bind Oceanside, as the principal, and AMIC, as the surety, jointly and severally in favor of the Club, as the obligee. [Complaint at ¶¶ 11, 15, 19.]

Plaintiffs recognize that: 1) the parties either expressly agreed, or implicitly agreed by their conduct, to extensions of the deadlines to complete work under the Club Improvements Agreement, the Phase 1 Agreement, and the Phase 2 Agreement (collectively "the Agreements"); 2) a court order enjoined work on the project for a period of time;[1] and 3) Plaintiffs, Oceanside, and AMIC entered into two tolling and standstill agreements, which were terminated before the filing of

---

[1] Once Oceanside was in a legal position to resume development, economic conditions had changed markedly and it was no longer in a financial position to complete the development.

the Complaint.  Despite these circumstances, Oceanside did not, and cannot, fulfill its obligations under the Agreements. Oceanside acknowledged this in writing on March 3, 2010.  [<u>Id.</u> at ¶¶ 20-22.]

That day, Plaintiffs notified AMIC of Oceanside's default and made a formal, written demand for AMIC to perform its obligations under the Bonds.  AMIC did not respond.  Plaintiffs sent letters dated March 17, 2010 and March 23, 2010, demanding that AMIC provide confirmation by April 5, 2010 of its commitment to performing its obligations under the Bonds.  AMIC has neither agreed to complete the work covered by the Bonds nor paid the face amount of the Bonds to Plaintiffs.  Plaintiffs state that they have satisfied all of their obligations under the Bonds. [<u>Id.</u> at ¶¶ 23-27.]

The Complaint alleges the following claims: 1) a claim by the Club against Oceanside for breach of the Club Improvements Agreement; 2) claims by HCA against Oceanside for breach of the Phase 1 Agreement and the Phase 2 Agreement; 3) a claim by the Club against AMIC for breach of the Club Improvements Bond; and 4) claims by HCA against AMIC for breach of the Phase 1 Bond and the Phase 2 Bond.  Plaintiffs seek: compensatory damages against Oceanside; judgment in the amount of the full penal sums of the Bonds against AMIC; attorneys' fees and costs; and any other appropriate relief.

On April 26, 2010, AMIC removed the action to this district court based on diversity jurisdiction.  [Notice of Removal at ¶ 4.]  Plaintiffs are both Hawai`i corporations, AMIC is an Illinois corporation, and Oceanside is a limited partnership organized under the laws of Hawai`i, with its principal place of business in Arizona.  Oceanside's only partner is a Washington corporation with its principal place of business in Arizona.  Thus, Oceanside is not a citizen of Hawai`i for diversity purposes.  [Id. at ¶¶ 8-12.]  AMIC also noted that there are common questions of law and fact between the instant case and another case currently pending in the district court, American Motorists Insurance Co. v. The Club at Hokuli`a, Inc., et al., CV 10-00199 SOM-KSC ("AMIC v. Hokuli`a").  AMIC stated that it intends to move to consolidate the two cases.  [Id. at ¶¶ 15-16.]  AMIC stated that it was unable to obtain Oceanside's consent to join in the removal of the instant case.  Oceanside's counsel informed AMIC's counsel that Oceanside was unlikely to consent, but Oceanside never gave a definite response.  [Id. at ¶ 17.]

AMIC amended the Notice of Removal ("Amended Notice") on May 7, 2010, stating that it inadvertently filed an incomplete notice.  The Amended Notice confirmed that Oceanside has refused to join in the removal.  The Amended Notice argues that Oceanside is "a sham or fraudulent defendant" because there is "a unity of

interest and ownership between Oceanside and Plaintiffs".
[Amended Notice at ¶ 19.]  AMIC therefore argues that the parties
should be realigned for purposes of removal.  Oceanside should be
realigned with Plaintiffs and therefore Oceanside's consent to
the removal was not necessary.  [Id. at ¶ 20.]

I.   **Motions to Remand**

        Plaintiffs' Motion and Oceanside's Motion raise
essentially the same legal arguments.

        Plaintiffs note that it is customary for a developer of
a master planned community to create an owners association and a
club entity and for the developer to retain control of both
entities during the early stages of marketing and sale.  This is
to prevent any changes which would jeopardize the developer's
ability to sell the remaining lots.  HCA is a typical homeowners
association, comprised of the owners of the lots in Hokuli`a, and
the Club has a structure typical of what is seen throughout the
country.  It is comprised of persons who purchased memberships
and Oceanside.  Plaintiffs emphasize that, although Oceanside
might have created the entities, the individual directors of a
nonprofit organization are required to discharge their duties in
good faith, with the care that an ordinary and prudent person
would exercise in a similar position, and in a manner that they
reasonably believe to be in the organization's best interests.
Thus, there was no collusion between Plaintiffs and Oceanside in

any decision relating to the Agreements or the Bonds.

Plaintiffs note that Hokuli`a has been the subject of extensive litigation in state court.  In October 2000, four individuals, later joined by a non-profit organization, filed suit against Oceanside and various government defendants.  This action addressed water pollution, compliance with state land use laws, and issues regarding burial sites and other native Hawaiian cultural and historic preservation issues.  The case proceeded to trial on the land use claims, and the plaintiffs ultimately obtained a permanent injunction prohibiting Oceanside from pursuing any construction or development at Hokuli`a.  Following appellate litigation and a subsequent settlement agreement, the injunction was vacated in March 2006.

In addition, two condemnation actions against the property culminated in a sixteen-day bench trial in July and August 2007.  In August 2009, a Hokuli`a lot owner brought an action involving the Bonds.  The owner's motion for a preliminary injunction on issues relating to the Bonds was denied.  The case was stayed and the owners' claims were referred to mediation and arbitration.  On April 29, 2010, the County of Hawai`i ("the County") filed suit against Oceanside, alleging, *inter alia*, breach of various contracts relating to the development of

Hokuli`a.[2]  All of these cases, and the instant case prior to removal, were filed in the State of Hawai`i Third Circuit Court and assigned to Judge Ronald Ibarra.

Plaintiffs argue that AMIC knew Plaintiffs were going to file suit on April 5, 2010 and, in an attempt to determine the forum in which this suit would be decided, AMIC filed <u>AMIC v. Hokuli`a</u> in federal court on April 5, 2010.  AMIC named the Club and HCA as the defendants, but alleged that Oceanside had operating control of the Club and HCA and that each was an alter ego of the other.  The original complaint in <u>AMIC v. Hokuli`a</u> sought declaratory relief that, *inter alia*, the Bonds have been discharged, exonerated, or otherwise limited because of the conduct of the Club, HCA, and Oceanside.  AMIC amended its complaint on April 26, 2010, adding Oceanside as a defendant and alleging four claims against it: breach of contract, specific performance, *quia timet*, and declaratory judgment.  The new claims arise out of indemnity agreements that Oceanside executed. The Club and HCA are not parties to the indemnity agreements, and AMIC's claims against Oceanside do not seek relief against the Club and HCA.  AMIC also added Oceanside as a defendant in its original claim for declaratory relief against the Club and HCA. Plaintiffs argue that this was "in name only" because the prayer

---

[2] On the same day, the County notified AMIC of Oceanside's default and demanded that AMIC perform its obligations under the four bonds for which the County is the obligee.

for relief in the declaratory judgment claim does not seek any relief from Oceanside.  [Mem. in Supp. of Pltfs.' Motion at 11.]

Plaintiffs emphasize that the removing party bears the burden of establishing federal jurisdiction and that there is a strong presumption against removal jurisdiction.  Further, the consent of all defendants is required for removal under 28 U.S.C. § 1441.  The only exception is for nominal, unknown, or fraudulently joined defendants.  AMIC argues that Plaintiffs fraudulently named Oceanside as a defendant because the unity of interests between Plaintiffs and Oceanside prevents Plaintiff from recovering from Oceanside under any theory.  AMIC essentially argues that there is an alter ego relationship between Plaintiffs and Oceanside.  Plaintiffs argue that this is a fact-specific determination which should not be made at this juncture of the case.

Plaintiffs argue that the issue in determining fraudulent joinder is whether there is any possibility that the plaintiff may prevail on the cause of action brought against the allegedly fraudulently joined defendant.  The mere fact that the plaintiff may not ultimately be able to prove facts to support its claim does not mean that the joinder was fraudulent.  The plaintiff's motive in joining the defendant is immaterial.  Plaintiffs argue that they have alleged actionable claims of breach of contract against Oceanside.

Plaintiffs also argue that it would be inappropriate to realign Oceanside with Plaintiffs.  Realignment would only be warranted if judgment in favor of Plaintiffs would confer a benefit on Oceanside.  The Ninth Circuit applies the "primary purpose" test to this inquiry.  A court must first identity the primary issue in the controversy and align the parties according their positions on that issue.  Plaintiffs argue that the primary purpose of this action is to establish the breach of the Agreements and the Bonds and to recover money damages which flow from the breach.  Plaintiffs contend that AMIC and Oceanside are jointly and severally liable on the Bonds.  Further, if Plaintiffs prevail against AMIC, AMIC is likely to seek indemnification from Oceanside under the indemnity agreements.  Thus, Plaintiffs' interests are not aligned with Oceanside's interests on the primary issue in this case.  The ancillary issue whether there is a relationship between Plaintiffs and Oceanside, which Plaintiffs deny, is not relevant to the principal issue.

Finally, Plaintiffs argue that they are entitled to the attorneys' fees and costs that they incurred in connection with the removal because AMIC's removal was not objectively reasonable.

Oceanside agrees that there is real conflict between it and Plaintiffs and that Plaintiffs have alleged viable claims against it.  Oceanside also disputes that it engaged in actions

which should prompt this Court to disregard Plaintiffs' and
Oceanside's corporate entities.  AMIC has not identified discrete
and undisputed facts establishing an alter ego relationship.
AMIC alleges that Oceanside and Plaintiffs commingled funds,
shared working capital, concealed their ownership, disregarded
legal formalities, and are controlled by each other.  These
allegations are not apparent from the Complaint and would require
an evidentiary hearing to determine if they are true.

     Although Oceanside has admitted its inability to
perform the contracts, there are important issues between
Plaintiffs on one side and AMIC and Oceanside on the other.  For
example, Plaintiffs must prove their damages in order to recover
from either AMIC or Oceanside.  AMIC has defenses that Oceanside
does not, such as defenses arising out of its position as a
surety, but that does not mean that Oceanside should be treated
as a plaintiff.  Oceanside also agrees that a judgment for
Plaintiffs will not benefit Oceanside.  Oceanside notes that, as
a general rule, indemnitors are aligned with their indemnitees in
cases where the principal obligation is in dispute.  Oceanside
cannot obtain any relief from AMIC.

     Finally, Oceanside also seeks its attorneys' fees and
costs incurred in connection with the removal.

## II.  **Memoranda in Opposition**

     AMIC's memorandum in opposition to Plaintiffs' Motion

12

and its memorandum in opposition to Oceanside's Motion are virtually identical.  AMIC states that, as partial consideration for issuing the Bonds, Oceanside executed two General Agreements of Indemnity in favor of AMIC.  According to AMIC, the Hokuli`a golf course is complete and operational, and much of the Phase 1 infrastructure is complete, but the remainder of the project is unfinished.  AMIC argues that, because of Oceanside's failure to complete the project, Oceanside has arguably been in default since 2003.  The fact that Plaintiffs could have declared Oceanside in default and sued it seven years ago raises an inference that Plaintiffs and Oceanside shared common interests and goals even then.

AMIC reiterates the arguments in its Amended Notice of Removal that there is an alter ego relationship between Oceanside and Plaintiffs and that a judgment in favor of Plaintiffs would also benefit Oceanside.  According to the State Department of Commerce and Consumer Affairs ("DCCA") website, the officers of the Club and HCA are largely comprised of Oceanside's officers and/or directors.  [Mem. in Opp. to Pltfs.' Motion, Request for Judicial Notice ("RJN in Opp. to Pltfs.' Motion"), Exh. B; Mem. in Opp. to Oceanside's Motion, Request for Judicial Notice ("RJN in Opp. to Oceanside's Motion"), Exh. B.]  AMIC asserts that three out of four officers of the Club and three out of the six HCA officers are directly associated with Oceanside.  AMIC argues

13

that Plaintiffs' Motion essentially admits that Plaintiffs are controlled by Oceanside.

Oceanside and Plaintiffs have taken the same position that: 1) Oceanside is in default on the Agreements; 2) the Bonds are valid and binding on AMIC; and 3) AMIC is responsible for completing Hokuli`a.  AMIC argues that Plaintiffs' and Oceanside's common litigation tactics strongly suggest that they are acting as one.  On May 17, 2010, Plaintiffs filed a motion to dismiss AMIC v. Hokuli`a, and Oceanside filed a similar motion the next day.  In the instant case, Plaintiffs' Motion and Oceanside's Motion are virtually identical.  AMIC also states that, in 2009, it requested that Oceanside and Plaintiffs produce documents relevant to Hokuli`a and the Bonds.  Oceanside produced some documents, although far less than expected, but Plaintiffs did not produce any documents.  Plaintiffs argued that AMIC already received those documents from Oceanside.  AMIC also asked that the three entities voluntarily produce documents regarding Oceanside's control of Plaintiffs, but all three entities refused.  AMIC was therefore forced to serve limited discovery requests.  Further, all three entities have opposed realignment and removal.  Thus, AMIC argues that Oceanside has not taken an adversarial position against Plaintiffs in this action.

AMIC argues that Plaintiffs cannot establish their breach of contract claims against Oceanside because they cannot

14

prove that they had valid and binding contracts with Oceanside. Oceanside's promise to fulfill its obligations under the Agreements was illusory.  Since Oceanside controls Plaintiffs, it was solely in Oceanside's discretion to determine whether or not to perform its obligations under the Agreements.

AMIC also notes that, according to the Hawai`i County Real Property Tax Office ("RPTO"), Oceanside owns no fewer than 116 of the Hokuli`a lots.  [RJN in Opp. to Pltfs.' Motion, Exh. C; RJN in Opp. to Oceanside's Motion, Exh. C.]  Thus, if Plaintiffs prevail in this action and AMIC is compelled to fund the completion of Hokuli`a, Oceanside would benefit both as the developer and as a member of HCA and the Club.  AMIC argues that, in determining whether parties should be realigned, courts look beyond the pleadings to the parties' actual interests.  AMIC argues that the primary issue is this case is whether and to what extent AMIC is liable under the Bonds.  Any claims that Plaintiffs may have against Oceanside are ancillary to the issue of AMIC's liability, and the Court should ignore those claims for realignment purposes.  AMIC acknowledges that typically its interests would be aligned with its bond principal, but, under the circumstances of this case, AMIC argues that Oceanside should be realigned as a plaintiff.  Oceanside's consent to the removal therefore was not necessary.

Finally, AMIC argues that Plaintiffs are not entitled

to their removal attorneys' fees and costs because removal was
proper.

        In addition to reiterating the arguments in its
memorandum in opposition to Plaintiffs' Motion, AMIC asserts, in
its memorandum in opposition to Oceanside's Motion, that
Oceanside is in financial trouble and therefore will likely be
unable to fulfill its obligation to reimburse AMIC for any
expenses AMIC incurs as a result of Oceanside's default.

## III. **Reply**

        In their reply, Plaintiffs reiterate that: the primary
purpose of this action is to recover damages from both Oceanside
and AMIC; Oceanside and AMIC are jointly and severally liable
under the Bonds; a judgment for Plaintiffs does not benefit
Oceanside; Judge Ibarra has nearly a decade of experience with
Hokuli`a litigation, including two pending cases regarding
similar issues to those in the instant case; and Plaintiffs are
entitled to attorneys' fees and costs.

        The mere fact that Oceanside has acknowledged its
default does not render the action an empty threat, nor does it
have the same effect as a judgment.  Plaintiffs must still prove
their damages, potentially including lost profits, and this will
be a hotly contested issue.  Plaintiffs must also refute the
defenses that Oceanside will inevitably raise.  Plaintiffs seek
substantial damages from Oceanside, and they fully intend to

prosecute those claims.  If Oceanside does not have the funds to

pay a judgment, Plaintiffs will attach or otherwise obtain a lien

on Oceanside's assets.  If Plaintiffs prevail, Oceanside will be

liable to both Plaintiffs and AMIC.  Thus, Oceanside and AMIC

have a common interest in disproving Plaintiffs' claims, or at

least limiting Plaintiffs' damages.

Plaintiffs also argue that having similar litigation

tactics to Oceanside's is irrelevant to the issue whether

Oceanside should be realigned.  Plaintiffs assert that there is

nothing suspicious about the timing or content of Plaintiffs' and

Oceanside's motions in this case and in AMIC v. Hokuli`a.  Each

motion merely responded to the applicable deadlines and addressed

the relevant issues.

Plaintiffs argue that the mere fact that some of

Oceanside's representatives sit on the board of directors of the

Club or HCA does not render Plaintiffs under Oceanside's control.

Further, Plaintiffs argue that there is no case that recognizes

control as a permissible grounds for realigning parties.  In

fact, corporations often sue their parents or their subsidiaries.

AMIC has failed to show that Plaintiffs are under Oceanside's

control or that the Agreements were illusory.  Plaintiffs

emphasize that removability is determined based on the pleadings,

and the Court would have to look beyond the pleadings to

determine whether there is actually an alter ego relationship

between Plaintiffs and Oceanside and to determine if the Agreements were illusory.

Plaintiffs deny that they could have declared Oceanside to be in default in 2003.  From 2003 to 2006, all construction and development was enjoined by Judge Ibarra.  After he lifted the injunction, construction resumed and continued for some time. In early 2008, although the developer recognized that development was temporarily suspended, it assured owners that it was in negotiations with its bank, was seeking equity partners, and that there were no discussions about abandoning the project.

Plaintiffs clarify that they have not sought to have AMIC complete the project.  They seek to have AMIC pay the penal sums of the Bonds.  Further, Plaintiffs have never seen Oceanside contend that AMIC must complete development of the project.

Although noting that the motive of a plaintiff in naming a defendant is irrelevant to the issue of fraudulent joinder, Plaintiffs also deny that they named Oceanside as a defendant to defeat AMIC's ability to remove the case. Plaintiffs had no way to anticipate that AMIC would seek to remove the case and that Oceanside would refuse to consent.

In its reply, Oceanside reiterates many of the arguments that it and Plaintiffs previously raised.  In addition, Oceanside notes, although it admits that it has failed to complete construction, it is at odds with Plaintiffs over what

18

performance Plaintiffs are entitled to.  The costs of the
required completion, which will significantly exceed the proceeds
of the Bonds, will be a contentious issue.  Oceanside states that
it will vigorously defend against Plaintiffs' claims because a
judgment for Plaintiffs will seriously damage Oceanside's
financial position.

Oceanside argues that Plaintiffs' claims against AMIC
are not the primary dispute because Plaintiffs cannot prevail
against AMIC unless they first prevail against Oceanside, and the
judgment against AMIC cannot exceed the judgment against
Oceanside.  Oceanside is the principal obligor with respect to
the Bonds, and AMIC's liability is secondary.  Further, Oceanside
will be required to reimburse AMIC for any amounts paid.  Thus,
all of Plaintiffs' claims implicate Oceanside's interests; AMIC's
liability is not the primary purpose of this action.  Oceanside
also notes that the case law typically involves realignment to
destroy diversity, but in this case AMIC wants to use realignment
to create federal jurisdiction, which is inconsistent with
limited federal jurisdiction.

Oceanside argues that AMIC's claims that the Agreements
are illusory necessarily implies that the Bonds are illusory as
well.  Oceanside, however, has paid over $3 million in premiums
on the Bonds over ten years, indicating that they are not
illusory.  Further, AMIC has not cited authority to support its

19

claim that the Agreements are illusory.  A developer's authority to establish and maintain temporary control of an owners association is established in Hawai`i law, and Oceanside has complied with the procedures for security bonds, as established by federal regulations.

Finally, Oceanside points out that any alleged cooperation in this litigation between Plaintiffs and Oceanside occurred after the filing of the Complaint, and therefore cannot be considered in determining removability.  Oceanside acknowledges that it has not taken as strong an adversarial position against Plaintiffs as AMIC has, but Oceanside asserts that this is because Oceanside's interests are in resolving this matter efficiently, with the least amount of collateral damage to the parties and the Kona community.

## DISCUSSION

### I.   Requests for Judicial Notice

Plaintiffs, Oceanside, and AMIC have each made a request for judicial notice.  Federal Rule of Evidence 201 governs judicial notice.  It states, in pertinent part:

> **(a) Scope of rule.**  This rule governs only judicial notice of adjudicative facts.
> **(b) Kinds of facts.**  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

> **(c) When discretionary.** A court may take judicial notice, whether requested or not.
> **(d) When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.
> **(e) Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
> **(f) Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

This district court has recognized that:

> This court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992). A court may also take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. See Lee v. City of Los Angeles, 250 F.3d 668, 689-690 (9th Cir.2001); see also Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir.1953) (holding a court may take judicial notice of records and reports of administrative bodies).

Finley v. Rivas, CV 10-00421 DAE-LEK, 2010 WL 3001915, at *2 n.2

(D. Hawai`i July 31, 2010).

Plaintiffs ask the Court to take judicial notice of matters in four state court cases regarding Hokuli`a:

> (1) the Amended Findings of Fact; Conclusions of Law; Order Regarding Trial on Count IV of the Fifth Amended Complaint in Kelly v. 1250 Oceanside Partners, et al., Civil No. 00-1-0192K, filed 10/22/03, Third Circuit Court;
> (2) the Hawai`i Supreme Court's opinion in County of Hawai`i v. C&J Coupe Family Limited Partnership, 119 Hawai`i 352, 198 P.3d 615 (2008);

21

> (3) Order Concerning: (1) Pltf.'s Mtn. for Mandatory
> Prelim. Injunc. Filed on August 26, 2009, etc., in <u>Meislin</u>
> <u>v. 1250 Oceanside Partners, et al.</u>, Civil No. 09-1-342K,
> filed 10/9/09; and
> (4) the fact that the plaintiff in <u>Meislin</u> filed a
> First Amended Complaint on May 4, 2010.

[Pltfs.' Motion, Request for Judicial Notice, Exhs. 1-4.]

Oceanside asks the Court to take judicial notice of the pleadings

in <u>AMIC v. Hokuli`a</u>.  [Oceanside's Request for Judicial Notice,

filed 5/26/10 (dkt. no. 30).]

The judicial proceedings that Plaintiffs and Oceanside

ask this Court to take judicial notice of are related to the

matters at issue in this case.  Further, the orders that

Plaintiffs seek judicial notice of are matters of public record.

The Court therefore GRANTS Plaintiff's Request for Judicial

Notice and Oceanside's Request for Judicial Notice.

AMIC asks the Court to take judicial notice of: an on-

line article from The Wall Street Journal regarding the financial

difficulties that Hokuli`a has experienced; printouts from the

DCCA showing, *inter alia*, the officers of the Club, HCA,

Oceanside, and related entities; and printouts from the RPTO

showing the owners of the lots in the Hokuli`a development.  [RJN

in Opp. to Pltfs.' Motion, Exhs. A-C; RJN in Opp. to Oceanside's

Motion, Exhs. A-C.[3]]

Although the Wall Street Journal is certainly a

---

[3] The two sets of documents that AMIC seeks judicial notice
of are identical.

reputable source, periodical articles that are unsupported by corroborating evidence are generally considered to be inadmissible hearsay.  See Patch v. Arpaio, CV 08-0388-PHX-GMS (DKD), 2010 WL 432354, at *12 (D. Ariz. Feb. 2, 2010) ("Although the newspaper articles proffered by Plaintiff are inadmissible, see Larez v. City of Los Angeles, 946 F.2d 630, 642-43 (9th Cir. 1991) (newspaper articles, unsupported by corroborating evidence, are generally inadmissible hearsay), the Court may take judicial notice of court records in other cases." (citation omitted)). This Court therefore finds that AMIC's Wall Street Journal article is not eligible for judicial notice.

As noted supra, the Court can take judicial notice of the records and reports of administrative bodies.  Courts will generally take judicial notice of certified copies of public records because they are self-authenticating, see Fed. R. Evid. 902(4), and sufficiently trustworthy.  See Fed. R. Evid. 803(8). The DCCA and RPTO printouts are not certified, and Plaintiffs dispute the printouts' accuracy.  [Pltfs.' Opp. to RJN in Opp. to Pltfs.' Motion, filed 7/16/10 (dkt. no. 53).]  This Court therefore finds that the DCCA and RPTO printouts do not satisfy Rule 201(b)'s requirements for judicial notice.  AMIC's Requests for Judicial Notice are DENIED in their entirety.

The Court notes that, even where it has granted the parties' requests for judicial notice, it has not considered

23

those items in rendering the instant findings and

recommendations.  The Court now turns to the merits of the

parties' motions.

## II.  **Whether Removal Was Proper**

AMIC removed the instant case pursuant to 28 U.S.C. §§

1441 and 1332.  [Notice of Removal at ¶ 4.]  Section 1441

provides, in pertinent part:

> (a) Except as otherwise expressly provided by
> Act of Congress, any civil action brought in a
> State court of which the district courts of the
> United States have original jurisdiction, may be
> removed by the defendant or the defendants, to the
> district court of the United States for the
> district and division embracing the place where
> such action is pending. . . .
> (b) Any civil action of which the district
> courts have original jurisdiction founded on a
> claim or right arising under the Constitution,
> treaties or laws of the United States shall be
> removable without regard to the citizenship or
> residence of the parties.  Any other such action
> shall be removable only if none of the parties in
> interest properly joined and served as defendants
> is a citizen of the State in which such action is
> brought.

28 U.S.C. § 1441.  Section 1441 is strictly construed against

removal and courts resolve any doubts about the propriety of

removal in favor of remanding the case to state court.  See

Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir.

2006).  The party seeking to remove the case bears the burden of

establishing the existence of federal jurisdiction.  See

California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838

(9th Cir. 2004).  The Ninth Circuit has held that "notice of

removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." <u>Harris v. Bankers Life & Cas. Co.</u>, 425 F.3d 689, 694 (9th Cir. 2005).

It is undisputed that there is complete diversity among the parties and that neither Oceanside nor AMIC is a citizen of Hawai`i.  The issue in the instant Motion is whether Oceanside's refusal to consent to the removal renders the removal defective.

The judicially created "rule of unanimity" generally requires that all defendants to an action consent to removal. <u>See</u> <u>Chicago, Rock Island & Pac. Ry. Co. v. Martin</u>, 178 U.S. 245, 248 (1900); <u>Proctor v. Vishay Intertechnology Inc.</u>, 584 F.3d 1208, 1225 (9th Cir. 2009) (citing <u>Lapides v. Bd. of Regents of Univ. Sys. of Ga.</u>, 535 U.S. 613, 620 (2002) (citing <u>Chicago</u> only for the proposition that "removal requires the consent of all defendants")).  The consent of "nominal, unknown or fraudulently joined parties," however, is not required.  <u>See</u> <u>United Computer Sys., Inc. v. AT & T Corp.</u>, 298 F.3d 756, 762 (9th Cir. 2002) (citation and quotation marks omitted).

### A.   **Fraudulent Joinder**

AMIC first argues that Plaintiffs' joinder of Oceanside was fraudulent.

> Fraudulent joinder "is a term of art." <u>Morris [v. Princess Cruises, Inc.]</u>, 236 F.3d [1061,] 1067 [(9th Cir.2001)].  "Joinder . . . is deemed fraudulent . . . '[i]f the plaintiff fails to

25

state a cause of action against a resident
defendant, and the failure is obvious according to
the settled rules of the state.'" <u>Id.</u>   There is a
"general presumption against fraudulent joinder .
. . ." <u>Hamilton Materials, Inc. v. Dow Chem.
Corp.</u>, 494 F.3d 1203, 1206 (9th Cir.2007).   Thus,
fraudulent joinder must be proven by clear and
convincing evidence.   <u>Id.</u> . . . .

     In determining whether there has been
fraudulent joinder, "'[t]he court may conduct a
Rule 12(b)(6)-type analysis, looking initially at
the allegations of the complaint to determine
whether the complaint states a claim under state
law against the in-state defendant.'"   <u>County of
Hawaii v. Unidev, LLC</u>, Civ. No. 09-00368 ACK-LEK,
LLC, 2010 WL 520696, at *4 (D.Haw. Feb.11, 2010)
(quoting <u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385
F.3d 568, 573 (5th Cir.2004) (en banc))
(alteration in original).   The removing defendant
must show "that there is no possibility, based on
the pleadings, that [the] plaintiff can state a
cause of action against the non-diverse defendant
in state court."   <u>Pampillonia v. RJR Nabisco,
Inc.</u>, 138 F.3d 459, 461 (2d Cir.1998); <u>see also
Morris</u>, 236 F.3d at 1068 (upholding the district
court's finding of fraudulent joinder as it was
"abundantly obvious that [the plaintiff] could not
possibly prevail on her negligent
misrepresentation claim"); <u>Cont'l Ins. Co. v. Foss
Mar. Co.</u>, No. C 02-3936 MJJ, 2002 WL 31414315, at
*6 (N.D.Cal. Oct.23, 2002) (noting that "the
standard is not whether [the] plaintiffs will
actually or even probably prevail on the merits,
but whether there is any possibility that they may
do so") (citation omitted); <u>Kalawe v. KFC Nat'l
Mgmt. Co.</u>, Civ. No. 90-00779 ACK, 1991 WL 338566,
at *2 (D.Haw. July 16, 1991) (noting that a party
is deemed to have been fraudulently joined if "the
plaintiff could not possibly recover against the
party whose joinder is questioned").   In addition
to examining the complaint, "the court may go
outside the pleadings, and the defendant may
present facts showing that the joinder is
fraudulent."   <u>Lovell v. Bad Ass Coffee Co. of
Haw., Inc.</u>, 103 F.Supp.2d 1233, 1237 (D.Haw.2000).
However, all disputed questions of fact and all
uncertainties in the controlling state law must be

resolved in favor of the plaintiff.  <u>Kalawe</u>, 1991 WL 338566, at *2 (citations omitted).

<u>Coastal Constr. Co. v. N. Am. Specialty Ins. Co.</u>, CV 10-00206 DAE-BMK, 2010 WL 2816694, at *4 (D. Hawai`i July 14, 2010) (some citations omitted) (some alterations in original) (discussing fraudulent joinder to defeat diversity jurisdiction).

### 1.  **Whether Plaintiffs Alleged an Actionable Claim**

The Complaint alleges a claim by the Club against Oceanside for breach of the Club Improvements Agreement and claims by HCA for breach of the Phase 1 Agreement and the Phase 2 Agreement.  The Allegations in the Complaint and the exhibits to the Complaint set forth: the elements of a valid contract under Hawai`i law; Oceanside's breach of the contract; and the fact that Plaintiffs suffered damages as a result of the breach.  This Court FINDS that Plaintiffs have alleged an actionable breach of contract claims against Oceanside under Hawai`i law.  <u>Cf.</u> <u>Wong v. City & County of Honolulu</u>, 333 F. Supp. 2d 942, 958 (D. Hawai`i 2004) (quoting <u>In re Doe</u>, 90 Hawai`i 200, 978 P.2d 166, 174 (1999); <u>Carson v. Saito</u>, 53 Haw. 178, 489 P.2d 636, 638 (1971) (some citations omitted)) (granting summary judgment in favor of the defendant on breach of contract claim because the plaintiff did not establish the elements of a valid contract).

AMIC also argues that Plaintiffs cannot recover on their breach of contract claims against Oceanside because the Agreements are illusory.  AMIC contends that Oceanside controls

Plaintiffs and that Oceanside has complete discretion to decide
whether or not to perform its obligations under the Agreements.
This, however, is not the type of fact pattern that renders a
contract illusory on its face under Hawai`i law.  See, e.g.,
Douglass v. Pflueger Hawaii, Inc., 110 Hawai`i 520, 534-35, 135
P.3d 129, 143-44 (2006) (holding that the parties' agreement to
forego court action and to submit disputes to arbitration was
illusory because, even though the arbitration provision was
supported by bilateral consideration on its face, elsewhere in
the employee handbook, the employer reserved the right to change
handbook at any time, without advance notice).  This Court
therefore FINDS, for purposes of this Motion, that AMIC has not
proven that the Agreements are illusory.

2.  **Alter Ego**

AMIC also argues that Plaintiffs cannot recover on
their breach of contract claims against Oceanside because there
is an alter ego relationship between Plaintiffs and Oceanside.
The only evidence that AMIC offers in support of this allegation
is the documents presented in its Request for Judicial Notice,
particularly the DCCA and RPTO printouts.  This Court has already
denied AMIC's Request for Judicial Notice.  Even if the Court had
granted the request, the documents would not support a finding
that there is an alter ego relationship between Plaintiffs and
Oceanside under Hawai`i law.

28

"Generally speaking, a corporation will be deemed the
alter ego of another where recognition of the corporate fiction
would bring about injustice and inequity or when there is
evidence that the corporate fiction has been used to perpetrate a
fraud or defeat a rightful claim." Robert's Hawaii Sch. Bus,
Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224, 241-42, 982 P.2d
853, 870-71 (1999) (citations and quotation marks omitted),
superseded by statute on other grounds, Haw. Rev. Stat. § 480-
2(e), as recognized in Davis v. Four Seasons Hotel Ltd., 122
Hawai`i 423, 429, 228 P.3d 303, 309 (2010).  The Hawai`i Supreme
Court has noted that "Hawai`i courts have been reluctant to
disregard the corporate entity." Robert's Hawaii, 91 Hawai`i at
241 n.12, 982 P.2d at 870 n.12 (citing Hilo Crane Serv. v. Ho, 5
Haw. App. 360, 374-75, 693 P.2d 412, 422 (1984) (refusing to
disregard corporate entity to apply principle of equitable
subordination, stating that "mere control or domination of a
corporation is not proscribed by law and is in itself
insufficient to justify piercing the corporate veil and
subordinating claims"); Henry Waterhouse Trust Co. v. Home Ins.
Co. of Hawai`i, 27 Haw. 572, 582, 586 (1923) (refusing to pierce
corporate veil and stating that party claiming corporation is
mere instrumentality carries the burden of proof); Kahili, Inc.
v. Yamamoto, 54 Haw. 267, 269-70, 271-72, 506 P.2d 9, 11-12
(1973) (piercing corporate veil because (1) two shareholders

29

owned all stock, (2) corporation was undercapitalized, and (3) shareholders' behavior in lease negotiations suggested they were acting for their behalf rather than for the corporation) (some citations omitted)).

Even if the Court accepted AMIC's assertions that the Club, HCA, and Oceanside have some common officers and directors and that Oceanside owns at least 116 out of over 600 Hokuli`a lots, this is not enough to warrant an alter ego finding. Further, AMIC has not proven that recognizing the Club, HCA, and Oceanside as distinct entities would cause injustice and inequity or that those entities used the corporate fiction to perpetrate a fraud or defeat a rightful claim.  AMIC alleges that Plaintiffs and Oceanside have used the corporate fiction to deprive AMIC of the right to have this case tried in federal court.  As previously noted, however, Plaintiffs have distinct and actionable claims against Oceanside.  Oceanside had a right to withhold consent to AMIC's removal and its assertion of that right is not an injustice to AMIC, nor does it prove that Plaintiffs and Oceanside are trying to defraud AMIC or defeat any of AMIC's rightful claims.  This Court therefore FINDS, for purposes of this Motion, that AMIC has not proven that there is an alter ego relationship between Plaintiffs and Oceanside.

The Court FINDS that AMIC has not carried its burden of proving fraudulent joinder.

B.    **Realignment**

AMIC next argues that the Court should realign Oceanside as a plaintiff in this action.  If Oceanside is designated as a plaintiff, Oceanside would not be required to consent to AMIC's removal.

The Ninth Circuit has stated that it "must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'"  Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 873 (9th Cir. 2000) (quoting Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1523 (9th Cir. 1987); City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941); Dolch v. United Cal. Bank, 702 F.2d 178, 181 (9th Cir. 1983) (some citations omitted)).

The Supreme Court has stated:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.  It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute.  Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest', exists, is therefore not to be determined by mechanical rules.  It must be ascertained from the 'principal purpose of the suit', and the 'primary and controlling matter in dispute'.  These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court.

31

Chase, 314 U.S. at 69-70 (citations and some quotation marks omitted).

        In this Court's view, the primary matter in dispute in this case is who is liable for the failure to meet the development deadlines for the Hokuli`a project, and what the extent of their liability is.  Although Oceanside concedes that it is in breach of the Agreements, the extent of its liability to Plaintiffs is in dispute.  There is also a critical dispute regarding whether AMIC is liable to Plaintiffs for Oceanside's breach based on AMIC's position as surety, and the extent of its liability.  In addition, if AMIC is found liable, it will seek reimbursement from Oceanside.  The disputes between Plaintiffs and AMIC and AMIC and Oceanside are secondary because AMIC cannot be held liable to Plaintiff, which would trigger Oceanside's liability for reimbursement, unless Plaintiffs prevail against Oceanside in the first instance.  Further, AMIC's liability cannot exceed Oceanside's.  This Court therefore FINDS that realignment of Oceanside as a plaintiff is not warranted.

        Insofar as Plaintiffs did not fraudulently join Oceanside as a defendant and realignment is not warranted, Oceanside remains a defendant in this action and AMIC was required to obtain Oceanside's consent to the removal.  See Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009).  This Court FINDS that the removal of this action was

32

defective because Oceanside did not consent to the removal.   The Court therefore RECOMMENDS that the instant case be remanded to state court.

### III. **Attorneys' Fees and Costs**

Finally, Plaintiffs and Oceanside argue that they are entitled to awards of the attorneys' fees and costs they incurred in connection with the improper removal.   Attorneys' fees and costs may be awarded upon remand under 28 U.S.C. § 1447(c), which states, in pertinent part, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

> The Supreme Court settled the standard for awarding attorney's fees when remanding a case to state court in Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).   The Court held that "the standard for awarding fees should turn on the reasonableness of the removal."   Id. at 141, 126 S.Ct. 704.   As the Court put it, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."   Id.

Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008) (alteration in original).   That a removing party's arguments lack merit is not enough to render removal objectively reasonable.   See id.   Removal is objectively unreasonable if "the relevant case law clearly foreclosed the defendant's basis of removal."   Id. at 1066 (citing Lott v. Pfizer, Inc., 492 F.3d 789

33

(7th Cir. 2007)).

Although AMIC's fraudulent joinder and realignment arguments were ultimately unsuccessful in this case, the relevant case law does not clearly foreclose removal under those theories. AMIC was merely unable to present enough evidence to establish the applicability of those doctrines in this case. Although, at this time, the Court cannot say that there is an alter ego relationship between Plaintiffs and Oceanside, they are clearly related entities. Further, although it is not enough to support realignment at this stage, if AMIC is ultimately found liable in this case, Oceanside will benefit in some ways. Under these circumstances, AMIC's concern that Plaintiffs and Oceanside cooperated to deny AMIC access to a federal forum was not objectively unreasonable.

This Court therefore FINDS that AMIC's removal of this action was not objectively unreasonable and RECOMMENDS that the district judge DENY Plaintiffs' and Oceanside's request for removal related attorneys' fees and costs.

## CONCLUSION

On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion for Remand, filed May 26, 2010, and Oceanside's Motion to Remand, also filed May 26, 2010, be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the district judge GRANT the motions as the request to remand

this case back to state court.  Further, the Court RECOMMENDS that the district judge DENY the motions as to the requests for attorneys' fees and costs associated with the removal.

The parties are advised that any objection to this Finding and Recommendation is due seventeen calendar days after being served with a copy of this Findings and Recommendation. See Fed. R. Civ. P. 5(b)(2) & 6(d); Local Rule LR74.2.  If an objection is filed with the Court, it shall be captioned "Objections to Magistrate Judge's Findings and Recommendation." A copy of the objection shall be served on all parties.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, September 3, 2010.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States Magistrate Judge

THE CLUB AT HOKULI'A, ET AL. V. AMERICAN MOTORISTS INS. CO., ET AL; CIVIL NO. 10-00241 JMS-LEK; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR REMAND AND DEFENDANT 1250 OCEANSIDE PARTNERS' MOTION TO REMAND